

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 HASSAN ABDALLAH, R.Ph.,
D-2 RAEF HAMAED, R.Ph.,
D-3 TAREK FAKHURI, R.Ph.,
D-4 KINDY GHUSSIN, R.Ph.,
D-5 BALHAR SINGH, R.Ph.,
D-6 ALI ABDELRAZZAQ, R.Ph.,

Defendants.
_______________________________/

Case:2:20-cr-20162
Judge: Parker, Linda V.
MJ: Whalen, R. Steven
Filed: 03-12-2020 At 02:51 PM
USA VS SEALED MATTER (DP)

VIO.: 18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

# INDICTMENT

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare and Medicaid Programs

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare covered different types of benefits and was separated into different program "parts." Medicare Part D subsidized the cost of prescription drugs for Medicare beneficiaries in the United States. Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

3. In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans. Medicare drug plans were operated by private health care insurance companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

4. Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

5. Qlarant is the Medicare Part D program integrity contractor for CMS under the National Benefit Integrity Medicare Drug Integrity Contract. Qlarant's role is to detect, prevent, and investigate allegations of fraud, waste, and abuse in Part D on a national level.

6. The Michigan and Ohio Medicaid programs ("Medicaid") were federal and state funded health care programs providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan and Ohio. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

7. Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

8. Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

9. Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

10. Medicare and Medicaid required health care providers to collect co-payments ancillary to the provision of items or services unless specifically excepted by law or regulation. Requiring beneficiaries to pay for part of the items or services they receive discourages patients from accepting items or services they do not need. It is unlawful to routinely waive co-payments under any federal health insurance program, including Medicare and Medicaid. The U.S. Department of Health and Human Services has concluded that reducing co-payments for beneficiaries of government health care programs, absent a showing of financial hardship, violates the federal Anti-Kickback Statute. Additionally, a co-payment waiver based on a failure to collect is prohibited if it is not preceded by a good faith collection effort.

**The Private Health Insurance Program**

11. Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan. BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

12. BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

13. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

**Pharmacy Benefit Managers**

14. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

15. After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

16. CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors) and Medicaid health plans. Express Scripts managed prescription drug benefits for BCBS. CVS Caremark processed and adjudicated claims in

Arizona. OptumRx and Express Scripts processed and adjudicated claims outside the state of Michigan.

**The Pharmacies**

17. Eastside Pharmacy, Inc. ("Eastside") was a pharmacy and Michigan corporation located at 11854 E. Warren Ave., Detroit, MI 48213.

18. Harper Drugs, Inc. ("Harper Drugs") was a pharmacy and Michigan corporation located at 16461 Harper Ave., Detroit, MI 48224.

19. Heartland Pharmacy LLC ("Heartland") was a pharmacy and Ohio limited liability company located at 3000 Far Hills Ave., Kettering, OH 45429.

20. Heartland Pharmacy 2, LLC ("Heartland 2") was a pharmacy and Ohio limited liability company located at 2749 W. Alex Bell Rd., Moraine, OH 45459.

21. Wayne Campus Pharmacy LLC ("Wayne Campus") was a pharmacy and Michigan limited liability company located at 1131 W. Warren, Detroit, MI 48201.

**The Defendants**

22. Defendant HASSAN ABDALLAH, a resident of Macomb County, Michigan, was a licensed pharmacist in Michigan and the owner, manager, and pharmacist-in-charge of Eastside, an owner and pharmacist of Harper Drugs, and an owner of Wayne Campus, Heartland, and Heartland 2.

23. Defendant RAEF HAMAED, a resident of Maricopa County, Arizona, was a licensed pharmacist in Michigan and an owner of Eastside, Harper Drugs, City Drugs, Wayne Campus, Heartland, and Heartland 2.

24. Defendant TAREK FAKHURI, a resident of Canada, was a licensed pharmacist in Michigan and the owner and pharmacist-in-charge of Harper Drugs, and the beneficial owner of Wayne Campus and Heartland.

25. Defendant KINDY GHUSSIN, a resident of Greene County, Ohio, was a licensed pharmacist in Michigan and Ohio and the owner and pharmacist-in-charge of Heartland and an owner of Wayne Campus and Heartland 2.

26. Defendant BALHAR SINGH, a resident of Butler County, Ohio, was a licensed pharmacist in Ohio and the pharmacist-in-charge of Heartland 2.

27. Defendant ALI ABDELRAZZAQ, a resident of Macomb County, Michigan, was a licensed pharmacist in Michigan and an owner and pharmacist-in-charge of Wayne Campus.

**Overview of the Scheme**

28. The Defendants and others engaged in a scheme and artifice to defraud Medicare, Medicaid, and BCBS by submitting, and causing the submission of, false and fraudulent claims through interstate wires to Medicare, Medicaid, and BCBS drug plan sponsors through Eastside, Harper Drugs, Heartland, Heartland 2, and Wayne Campus. The false and fraudulent claims consisted of prescriptions that were

submitted as claims to Medicare, Medicaid, and BCBS drug plan sponsors through Eastside, Harper Drugs, Heartland, Heartland 2, and Wayne Campus as if they were dispensed to beneficiaries, but in fact never were dispensed to those beneficiaries.

29. Over the course of the scheme, which began in or about 2010 and continued through approximately 2019, ABDALLAH, HAMAED, FAKHURI, GHUSSIN, SINGH, and ABDELRAZZAQ submitted or caused to be submitted approximately $6.5 million in false and fraudulent claims. ABDALLAH, HAMAED, FAKHURI, GHUSSIN, SINGH, and ABDELRAZZAQ personally profited from their participation in the scheme by receiving fraud proceeds for the personal use and benefit of themselves and others directly or indirectly through interstate wires.

**Object and Purpose of the Scheme**

30. The object and purpose of the conspiracy was for HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, BALHAR SINGH, ALI ABDELRAZZAQ, and others to unlawfully enrich themselves and others by, among other things: (a) submitting, and causing the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS through Eastside, Harper Drugs, Heartland, Heartland 2, and Wayne Campus; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare, Medicare

drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendants and others.

**Description of the Scheme**

31. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, ALI ABDELRAZZAQ, and others maintained national provider identifiers for Eastside, Harper Drugs, Heartland, Heartland 2, and Wayne Campus in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

32. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, ALI ABDELRAZZAQ, and others, on behalf of Eastside, Harper Drugs, Heartland, Heartland 2, and Wayne Campus, entered into pharmacy provider agreements with CVS Caremark, OptumRx or affiliated pharmacy services administration organizations (collectively, "OptumRx"), and Express Scripts, among other PBMs.

33. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, BALHAR SINGH, ALI ABDELRAZZAQ, and others submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, via interstate wires and on behalf of Eastside, Harper Drugs, Heartland, Heartland 2, and

Wayne Campus for prescription drugs that were not dispensed, at times because the beneficiaries were deceased, and often medically unnecessary.

34. False and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, BALHAR SINGH, ALI ABDELRAZZAQ, and others electronically submitted, and caused to be electronically submitted, to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were processed and adjudicated electronically by CVS Caremark, OptumRx, and Express Scripts, among other PBMs, outside the state of Michigan. False and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, ALI ABDELRAZZAQ, and others electronically submitted, and caused to be electronically submitted, to BCBS were processed and adjudicated electronically by Express Scripts outside the state of Michigan.

35. Qlarant conducted an invoice review for Eastside. Qlarant compared Eastside's purchases of certain medications to its Medicare and Medicaid claims data for those same medications during the approximate time period of January 3, 2011 through April 22, 2016. Qlarant concluded that Eastside's inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid. Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid Eastside approximately $2,475,905.09 for medications that Eastside did not have sufficient inventory to dispense.

36. HASSAN ABDALLAH, RAEF HAMAED, and others caused an approximate loss of approximately $2.5 million to Medicare and Medicaid because of the false and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, and others submitted and caused to be submitted on behalf of Eastside.

37. HASSAN ABDALLAH, RAEF HAMAED, and others caused an approximate loss of at least $197,000 to BCBS because of the false and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, and others submitted and caused to be submitted on behalf of Eastside.

38. Qlarant conducted an invoice review for Harper Drugs. Qlarant compared Harper Drugs' purchases of certain medications to its Medicare and Medicaid claims data for those same medications during the approximate time period of January 2, 2010 to August 23, 2016. Qlarant concluded that Harper Drugs' inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid. Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid Harper Drugs approximately $2,578,159.38 for medications that Harper Drugs did not have sufficient inventory to dispense.

39. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, and others caused an approximate loss of approximately $2.6 million to Medicare and Medicaid because of the false and fraudulent claims that HASSAN ABDALLAH,

RAEF HAMAED, TAREK FAKHURI, and others submitted and caused to be submitted on behalf of Harper Drugs.

40. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, and others caused an approximate loss of at least $166,000 to BCBS because of the false and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, and others submitted and caused to be submitted on behalf of Harper Drugs.

41. Qlarant conducted an invoice review for Heartland. Qlarant compared Heartland's purchases of certain medications to its Medicare and Medicaid claims data for those same medications during the approximate time period of December 4, 2012 to June 4, 2019. Qlarant concluded that Heartland's inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid. Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid Heartland approximately $690,588.92 for medications that Heartland did not have sufficient inventory to dispense.

42. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, and others caused an approximate loss of approximately $691,000 to Medicare and Medicaid because of the false and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, and others submitted and caused to be submitted on behalf of Heartland.

43. Qlarant conducted an invoice review for Heartland 2. Qlarant compared Heartland 2's purchases of certain medications to its Medicare and Medicaid claims data for those same medications during the approximate time period of December 15, 2012 to June 4, 2019. Qlarant concluded that Heartland 2's inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid. Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid Heartland 2 approximately $394,983.47 for medications that Heartland 2 did not have sufficient inventory to dispense.

44. HASSAN ABDALLAH, RAEF HAMAED, KINDY GHUSSIN, BALHAR SINGH, and others caused an approximate loss of approximately $395,000 to Medicare and Medicaid because of the false and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, KINDY GHUSSIN, BALHAR SINGH, and others submitted and caused to be submitted on behalf of Heartland 2.

45. Qlarant conducted an invoice review for Wayne Campus. Qlarant compared Wayne Campus's purchases of certain medications to its Medicare and Medicaid claims data for those same medications during the approximate time period of January 20, 2012 to December 31, 2016. Qlarant concluded that Wayne Campus's inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid. Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid Wayne Campus approximately

$325,555.58 for medications that Wayne Campus did not have sufficient inventory to dispense.

46. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, ALI ABDELRAZZAQ, and others caused an approximate loss of approximately $326,000 to Medicare and Medicaid because of the false and fraudulent claims that HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, ALI ABDELRAZZAQ, and others submitted and caused to be submitted on behalf of Wayne Campus.

47. TAREK FAKHURI concealed his ownership interest in Harper Drugs, Wayne Campus, and Heartland through a closely related individual.

48. The Defendants induced physicians to write prescriptions for medications to be filled at one of their pharmacies by offering or paying or causing the offering or paying of remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to those physicians.

49. The Defendants coordinated with physicians to write prescriptions on the basis of the reimbursement amount the pharmacies would receive for claims for those prescriptions and not the medical necessity of patients.

50. Medicare and Medicaid beneficiaries would receive remuneration, an inducement, or a kickback in the form of the Defendants or individuals acting on their behalf not collecting copays or coinsurance fees from the beneficiaries in order

for the beneficiaries to bring their prescriptions at the pharmacies, including for medications not dispensed.

51. Medicare and Medicaid beneficiaries would receive remuneration, an inducement, or a kickback in the form of the Defendants or individuals acting on their behalf permitting the beneficiaries to receive merchandise from their pharmacies without collecting any payment.

52. The Defendants and others acting on their behalf solicited and received cash payments from Medicare or Medicaid beneficiaries for controlled substance prescriptions in excess of any required copay or coinsurance fee.

53. HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, BALHAR SINGH, ALI ABDELRAZZAQ, and others caused the transfer and disbursement of illicit proceeds derived from the fraudulent scheme to themselves and others.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

54. Paragraphs 1 through 53 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

55. From at least in or around 2010, and continuing through in or around 2019, the exact dates being unknown to the Grand Jury, in Wayne County, and Macomb County, in the Eastern District of Michigan, and elsewhere, HASSAN

ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, BALHAR SINGH, ALI ABDELRAZZAQ and others did willfully and knowingly combine, conspire, confederate, and agree to commit certain offenses against the United States, that is:

(a) to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services; and

(b) to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and

cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

**Purpose of the Conspiracy**

56. The object and purpose of the conspiracy is described in Paragraph 30 and is re-alleged and incorporated by reference as though fully set forth herein.

**Manner and Means of the Conspiracy**

57. In furtherance of the conspiracy and to accomplish its object and purpose, the manners and means that were used are described in Paragraphs 31 through 53 and are re-alleged and incorporated by reference as though set forth fully herein.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-9**
**Health Care Fraud**
**(18 U.S.C. §§ 1347 and 2)**

58. Paragraphs 1 through 53 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

59. Beginning in 2010 and continuing through at least 2019, in Macomb and Wayne Counties, in the Eastern District of Michigan, and elsewhere, HASSAN ABDALLAH, TAREK FAKHURI, and ALI ABDELRAZZAQ, as specified below, did knowingly and willfully execute, and attempt to execute, a scheme and artifice

to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

**Purpose of the Scheme and Artifice**

60. Paragraph 30 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

**The Scheme and Artifice**

61. Paragraphs 31 through 53 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution of the Scheme and Artifice**

62. On or about the dates set forth below, in Wayne and Macomb Counties, in the Eastern District of Michigan, HASSAN ABDALLAH, TAREK FAKHURI, ALI ABDELRAZZAQ, and others did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in that HASSAN ABDALLAH, TAREK FAKHURI, ALI BDELRAZZAQ, and others submitted and caused the submission of false and fraudulent claims for payment and falsely represented that Eastside, Harper Drugs, and Wayne Campus provided prescription medications to Medicare and Medicaid beneficiaries, as described in Paragraphs 31 to 53 of this Indictment, with each execution set forth below forming a separate count:

| Count | Defendant(s) | Pharmacy | Benef. | Approx. Date of Alleged Fill | Description of Prescription Medication | Approx. Paid Amount |
|---|---|---|---|---|---|---|
| 2 | D-1 HASSAN ABDALLAH | Eastside | B.R. | 8/27/2015 | Hydrocodone-Acetaminophen | $22.52 |
| 3 | D-1 HASSAN ABDALLAH | Eastside | M.J-W. | 12/3/2015 | Spiriva | $318.59 |
| 4 | D-1 HASSAN ABDALLAH | Eastside | D.R. | 3/31/2016 | Advair | $342.33 |
| 5 | D-3 TAREK FAKHURI | Harper Drugs | S.B. | 10/29/2015 | Nitrostat | $39.07 |
| 6 | D-3 TAREK FAKHURI | Harper Drugs | L.C. | 2/3/2016 | Lantus | $499.01 |
| 7 | D-6 ALI ABDELRAZZAQ | Wayne Campus | R.W. | 10/28/2015 | Spiriva | $318.59 |
| 8 | D-6 ALI ABDELRAZZAQ | Wayne Campus | M.H. | 1/9/2016 | Spiriva | $317.56 |
| 9 | D-6 ALI ABDELRAZZAQ | Wayne Campus | B.B. | 6/11/2015 | Dulera | $259.91 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE

63. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, BALHAR SINGH, and ALI ABDELRAZZAQ have an interest, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461.

64. Upon conviction of violations alleged in this Indictment, HASSAN ABDALLAH, RAEF HAMAED, TAREK FAKHURI, KINDY GHUSSIN, BALHAR SINGH, and ALI ABDELRAZZAQ shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, pursuant to 18 U.S.C. § 981(a)(1)(C), together with Title 28 U.S.C. § 2461, and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

65. *Money Judgment*: The government shall also seek a forfeiture money judgment from the defendants for a sum of money representing the value of the property subject to forfeiture.

66. *Substitute Assets*: If the property described above as being subject to forfeiture, as a result of any act or omission of any defendant:

a.) cannot be located upon the exercise of due diligence;

b.) has been transferred or sold to, or deposited with, a third party;

c.) has been placed beyond the jurisdiction of the Court;

d.) has been substantially diminished in value; or

e.) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendants, up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

*s/Grand Jury Foreperson*
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

*S/Regina McCullough*
REGINA MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

*s/Malisa Dubal*
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

*s/Howard Locker*
HOWARD LOCKER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

*s/Claire Sobczak*
CLAIRE SOBCZAK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

Dated: March 12, 2020



ORIGINAL

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | **Case Number** |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes ☒ No | **AUSA's Initials:** |

**Case Title:** USA v. Hassan Abdallah, et al.

**County where offense occurred :** Wayne County and Macomb County

**Check One:** ☒ **Felony** ☐ **Misdemeanor** ☐ **Petty**

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information

**Superseding to Case No:** ______________ **Judge:** ______________

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

March 12, 2020
Date

Howard Locker
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 202-878-9409
Fax: 313-226-2621
E-Mail address: Howard.Locker@usdoj.gov
Attorney Bar #: NY- 5035514, CT- 433489

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.